## 29001. COLLUM v. THE STATE.

DECIDED SEPTEMBER 6, 1941.

*Fort & Fort,* for plaintiff in error.
*E. L. Forrester, solicitor-general,* contra.

GARDNER, J. The defendant was tried on a charge of murder and convicted of involuntary manslaughter in the commission of an unlawful act. He made a motion for a new trial, based on the usual general grounds, which the court overruled, and he excepted.

The only question for the court to decide is, does the record show sufficient evidence to support the verdict? Briefly the evidence shows as follows: The defendant, the deceased, and two other companions traveling in an automobile, arrived from Colquitt, Georgia, in the City of Americus. All had been drinking to some extent. They went into an eating place, ordered sandwiches, and up to this time they were peaceful. The defendant remarked that he did not know that he wanted a sandwich. The deceased replied: "Go ahead and eat it, you son of a bitch." The defendant retorted: "Don't say that any more." The deceased repeated the opprobrious words. The defendant, according to some of the State's witnesses, facing Jordan, struck him one severe blow with his fist

in the face and knocked him back and onto the concrete floor. Jordan was rendered unconscious and was carried to a hospital for treatment. An examination was made of Jordan by Dr. Primrose, on his arrival at the hospital. This occurred about eight o'clock in the evening. The next morning Jordan was removed from the hospital by his family and the family physician, Dr. Smith. The injuries caused the subsequent death of Jordan. Both doctors testified that there were three wounds on him, two on the scalp, and one, a laceration, on the face. Dr. Primrose testified in part as follows: "There was one wound in the back of the head about level with the top of his ear on the left side. The scalp was lacerated down to the bone, exposing the skull, and a small wound about an inch or two on this side. It was the back part of the head. There is a knucklebone that protrudes on the back part of the head. The wound I found was below the knucklebone. The wound was down to the bone. If a man was knocked down on a level or substantially level concrete floor the part of the head which most probably would come in contact with the floor would be the most prominent part of the head, just about that knucklebone. The wound I have described is below that location. Any blunt instrument could have caused the wound on the left back of the head. If a man was knocked down and hit on a concrete floor, and assuming he fell on his back, I do not see how a man could have very probably received a wound like he received so low down. After examining the wounds, the wound on the back of the head and the wound on the side level with the ear, it was my conclusion at the time that he was struck in the back of the head with some heavy blunt instrument, with force necessarily. It could have been anything made of metal or a very heavy bottle or something like that. A pistol butt, brass knucks, or any piece of iron. The right side of Mr. Jordan's face was swollen and scratched up considerably, and the right eye was closed from swelling. From the appearance of the side of his face he must have come in contact with some substance that was sliding or scratching over his face. I am familiar with concrete floors. If a man fell on his face on a concrete floor I would say that he would receive such scratches as I found on Mr. Jordan's face. I could not give you offhand any other reason or way that those scratches could have occurred. When I examined the wounds on the body of Mr. Jordan I came to the conclusion that there was

possibly a fracture at the base of the skull with hemorrhages of the brain. He was in an unconscious condition when I saw him. The wound level with the ear on the left side in my opinion caused the fracture at the base of the skull. Mr. Jordan's condition was critical the night I examined him. In my opinion the wound would possibly be a mortal wound." Dr. Smith in substance corroborated the testimony of Dr. Primrose.

The indictment charged, and the evidence was sufficient to show, that Jordan was struck by a blunt instrument or other means used in a manner and to an extent unjustified under the law. This was peculiarly a jury question. This court is without authority to interfere with its finding. *Clarke* v. *State*, 35 *Ga.* 75 (3); *Smith* v. *State*, 47 *Ga. App.* 781 (171 S. E. 587); *Prosser* v. *State*, 60 *Ga. App.* 604 (4 S. E. 2d, 499). No one will dispute the right of the defendant to assault and beat another for such opprobrious words as Jordan used towards the defendant in the instant case. Code, § 26-1409, announces this right. It provides: "On the trial of an indictment for an assault, or an assault and battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten; and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." But the law also says, inferentially at least, that the battery can not be disproportionate to the opprobrious words used, and never to the extent of taking life, intentionally or unintentionally, where the battery is excessive. Any step beyond proportionate resentment carries one into the mire of unlawfulness, whether there be one or many blows, and the Code section quoted provides the means by which this question is determined, as follows: "And such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." It will be seen that this is always a question for the jury in each case under all the facts and circumstances adduced on the trial. The jury heard all the testimony and were correctly informed as to the law applicable thereto. Even though the State's evidence may in part have been in conflict, on the whole evidence the jury determined that the blow inflicted by the defendant was disproportionate to the opprobrious words used and was therefore unlawful,

whether inflicted with the fist or other instrument causing Jordan's death. On the question of conflict in the testimony of the State's witnesses, see *Alexander* v. *State*, 1 *Ga. App.* 289 (57 S. E. 996); *Sessions* v. *State*, 6 *Ga. App.* 336 (2) (64 S. E. 1101).

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*